FRANCIS O. SCARPULLA (CASB No. 41059)
PATRICK B. CLAYTON (CASB No. 240191)
LAW OFFICES OF FRANCIS O. SCARPULLA
456 Montgomery Street, 17th Floor
San Francisco, CA  94111
Telephone:  (415) 788-7210
Facsimile:   (415) 788-0706
fos@scarpullalaw.com
pbc@scarpullalaw.com

W. TIMOTHY NEEDHAM (CASB No. 96542)
AMELIA F. BURROUGHS (CASB No. 221490)
JANSSEN MALLOY LLP
730 Fifth Street
P.O. Drawer 1288
Eureka, CA  95501
Telephone:  (707) 445-2071
Facsimile:  (707) 445-8305
tneedham@janssenlaw.com
aburroughs@janssenlaw.com

*Counsel for Plaintiff*
KATHY VANGEMERT

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| KATHY VANGEMERT, on behalf of herself and all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>STARKIST COMPANY, BUMBLE BEE FOODS, LLC, TRI-UNION SEAFOODS LLC, and KING OSCAR, INC.,<br><br>Defendants | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff, Kathy Vangemert, by and through her undersigned attorneys, demanding trial by jury, complains and alleges as follows:

## I.      JURISDICTION AND VENUE.

1.      This Complaint is filed pursuant to Sections 4 and 16 of the Clayton Act (15 U.S.C. 15, 26) to obtain equitable relief, as well as to recover treble damages, costs of suit, and reasonable attorneys' fees for Defendants' violations of Sections 1 and 3 of the Sherman Act (15 U.S.C. 1, 3). This Court has original federal-question jurisdiction over the Sherman Act claims asserted in this Complaint pursuant to Title 28, United States Code, Sections 1331 and 1337, as well as pursuant to Sections 4 and 16 of the Clayton Act (15 US.C. 15, 26).  This Court also has jurisdiction over the state-law claims pursuant to Title 28, United States Code, Section 1332(d) and the Class Action Fairness Act of 2005 ("CAFA"), Title 28, United States Code, Section 1711, *et seq.*, which vest original jurisdiction in the District Courts of the United States for any state-law class action where the aggregate amount in controversy exceeds $5 million and where the citizenship of any member of the class of plaintiffs is different from that of any defendant.  The $5 million amount-in-controversy and diverse-citizenship requirements of CAFA are satisfied in this case.

2.      Venue is proper in this District pursuant to Sections 4(a) and 12 of the Clayton Act (15 U.S.C. 15, 22), and Title 28, United States Code, Section 1391(b), (c), and (d), because Defendants reside, transact business, are found and/or have agents within this District.  Moreover, the events giving rise to Plaintiff's claims occurred in this District, and a substantial portion of the affected interstate trade and commerce described below has been carried out in this District.

3.      This Court has personal jurisdiction over Defendants because each:  (a) transacts business in this District; (b) directly or indirectly sold and delivered Packaged Seafood Products (as hereinafter defined) in this District; (c) had substantial aggregate contacts with this District; and (d) engaged in an illegal price-fixing conspiracy that was directed at, and had the intended effect of causing injury to, persons and entities residing in, located in, or doing business in this District.

1    **II.    PARTIES.**

2         **A.    Plaintiff.**

3         4.    Plaintiff, Kathy Vangemert, is a resident of the State of Florida.  During the Class

4    Period, Plaintiff indirectly purchased Packaged Seafood Products (which refers to shelf-stable

5    seafood products – predominantly tuna – that are sold in cans, pouches, or ready-to-eat serving

6    packages ("PSPs")) for her own use and not for resale from one or more of the Defendants and has

7    suffered damages to her business or property as a result of the antitrust violations alleged herein.

8         **B.    Defendants**.

9         5.    StarKist Company ("StarKist"), a domestic corporation with its principal place of

10   business located at 225 North Shore Drive, Suite 400, Pittsburgh, PA  15212, is hereby named a

11   Defendant herein.  StarKist produces and sells PSPs throughout the United States (including in

12   this District), its territories and the District of Columbia.  StarKist is privately owned by Dongwon

13   Enterprise ("Dongwon"), based in South Korea.

14        6.    Bumble Bee Foods, LLC ("Bumble Bee"), a domestic corporation with its principal

15   place of business located at 280 Tenth Avenue, San Diego, CA  92101, is hereby named a

16   Defendant herein.  Bumble Bee produces and sells PSPs throughout the United States (including

17   in this District), its territories and the District of Columbia.  Bumble Bee is privately owned by

18   Lion Capital ("Lion"), based in the United Kingdom.

19        7.    Tri-Union Seafoods LLC ("Tri-Union"), a domestic corporation with its principal

20   place of business located at 9330 Scranton Road, Suite 500, San Diego, CA  92121, is hereby

21   named a Defendant herein.  Tri-Union produces and sells PSPs throughout the United States

22   (including in this District), its territories and the District of Columbia, and markets these products

23   under the brand name "Chicken of the Sea."  Unless otherwise indicated, Tri-Union will be

24   referred to herein as "Chicken of the Sea" throughout this Complaint.

25        8.    King Oscar, Inc. ("King Oscar"), a domestic corporation with its principal place of

26   business located at 3838 Camino Del Rio North, Suite 115, San Diego, CA  92108, is hereby

27   named a Defendant herein.  King Oscar produces and sells PSPs throughout the United States

28

(including in this District), its territories and the District of Columbia.

9.      Chicken of the Sea and King Oscar are wholly owned by Thai Union Frozen Products, a public company headquartered in Thailand, and will be referred to collectively as "Tri-Union" in this Complaint.

**C.      Co-Conspirators.**

10.     Other persons, firms and corporations, presently unknown to Plaintiff, participated as co-conspirators with Defendants in their unlawful restraints of trade alleged herein.   When Plaintiff ascertains the identity of any co-conspirator, Plaintiff will seek leave to add that person or entity as a defendant herein.

**D.      Agents.**

11.     The acts alleged to have been done by Defendants were authorized, ordered, or performed by their directors, officers, managers, agents, employees, or representatives while actively engaged in the management of each Defendant's affairs.

**III.    THE CLASS.**

12.     Plaintiff brings this action on her own behalf and as a representative of a  class pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure seeking equitable and injunctive relief, including disgorgement and/or restitution, as well as costs and attorneys' fees, on behalf of the following Nationwide Equitable Relief Class (the "Nationwide Class"):

> All individuals and entities, who are residents of the United States, its territories and the District of Columbia, and who indirectly purchased Packaged Seafood Products for their own use and not for resale within the United States, its territories and the District of Columbia from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from the Class are all governmental entities and the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

13.     Additionally, plaintiff brings this action on her own behalf and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to state antitrust, unfair competition, and consumer protection laws as well as common-law unjust

enrichment on behalf of the following Classes (the "Damages Classes"):

(a)     Arizona:  All individuals and entities, residing in Arizona, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of Arizona from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(b)     Arkansas:  All individuals and entities, residing in Arkansas, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of Arkansas from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(c)     California:  All individuals and entities, residing in California, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of California from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(d)     District of Columbia:  All individuals and entities, residing in the District of Columbia, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the District of Columbia from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(e)     Florida:  All individuals and entities, residing in Florida, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of Florida from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(f)     Hawaii:  All individuals and entities, residing in Hawaii, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of Hawaii from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are Defendants, any parent, subsidiary or affiliate thereof, and all governmental entities, the Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(g)     Illinois:  All individuals and entities, residing in Illinois, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of Illinois from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(h)     Iowa:  All individuals and entities, residing in Iowa, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of Iowa from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(i)     Kansas:  All individuals and entities, residing in Kansas, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of Kansas from any Defendant or

any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present. Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families. Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(j)     Michigan: All individuals and entities, residing in Michigan, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of Michigan from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present. Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families. Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(k)     Minnesota: All individuals and entities, residing in Minnesota, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of Minnesota from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present. Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families. Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(l)     Mississippi: All individuals and entities, residing in Mississippi, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of Mississippi from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present. Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families. Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(m)     Missouri: All individuals and entities, residing in Missouri, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of Missouri from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present. Excluded from this

Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(n)     Montana:  All individuals and entities, residing in Montana, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of Montana from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(o)     Nebraska:  All individuals and entities, residing in Nebraska, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of Nebraska from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(p)     Nevada:  All individuals and entities, residing in Nevada, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of Nevada from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(q)     New Hampshire:  All individuals and entities, residing in New Hampshire, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of New Hampshire from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court

staff assigned to this Class Action, including their immediate families.

(r)      New Mexico:  All individuals and entities, residing in New Mexico, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of New Mexico from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(s)      New York:  All individuals and entities, residing in New York, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of New York from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(t)      North Carolina:  All individuals and entities, residing in North Carolina, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of North Carolina from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(u)      North Dakota:  All individuals and entities, residing in North Dakota, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of North Dakota from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present. Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(v)     Oregon:  All individuals and entities, residing in Oregon, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of Oregon from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(w)     South Carolina:  All individuals and entities, residing in South Carolina, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of South Carolina from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(x)     South Dakota:  All individuals and entities, residing in South Dakota, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of South Dakota from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present. Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(y)     Tennessee:  All individuals and entities, residing in Tennessee, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of Tennessee from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(z)     Utah:  All individuals and entities, residing in Utah, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of Utah from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(aa)    Vermont:  All individuals and entities, residing in Vermont, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of Vermont from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

(bb)    Wisconsin:  All individuals and entities, residing in Wisconsin, and who indirectly purchased Packaged Seafood Products for their own use and not for resale in the State of Wisconsin from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from this Class are all governmental entities, the Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families.  Also excluded from this Class is any judge, juror, or court staff assigned to this Class Action, including their immediate families.

14.     The Nationwide Class and the Damages Classes are referred to collectively herein as the "Classes."

15.     Due to the nature of the trade and commerce involved, Plaintiff believes that members of the Classes are sufficiently numerous and geographically dispersed throughout the United States, its territories and the District of Columbia so that joinder of all members of the Classes is impracticable.

16.     There are questions of law and fact which are common to the claims of Plaintiff and the Classes, including, but not limited to:

a.     Whether Defendants and any co-conspirators engaged in a combination or conspiracy to affect, fix, control, raise, stabilize, and/or maintain the prices for PSPs;

b.     Whether the purpose and/or effect of the acts and omissions alleged herein was to restrain trade, or to affect, fix, control, raise, stabilize, and/or maintain prices for PSPs;

c.     The existence and duration of the horizontal agreements alleged herein to affect, fix, control, raise, stabilize, and/or maintain the prices for PSPs;

d.     Whether Defendants violated Sections 1 and 3 of the Sherman Act (15 U.S.C. 1, 3), as well as all state statutes pleaded below;

e.     Whether Plaintiff and members of the Nationwide Equitable Relief Class are entitled to injunctive relief to prevent the continuation or furtherance of the violation of Sections 1 and 3 of the Sherman Act., as well as disgorgement and/or restitution from each Defendant; and

f.     Whether, and to what extent, the conduct of Defendants caused injury to Plaintiff and members of the Damages Classes, and, if so, the appropriate measure of damages.

17.     These questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members.

18.     Plaintiff's claims are typical of the claims of the members of the Classes.

19.     Plaintiff will fairly and adequately assert and protect the interests of the members of the Classes.  Plaintiff's interests are identical with, and not antagonistic to, those of the other members of the Classes.

20.     Plaintiff is represented by competent counsel who are experienced in the prosecution of antitrust and class action litigation.

21.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

a.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants;

b.      The members of the Classes are readily definable and one for which purchase records should exist;

c.      Prosecution as a class action will eliminate the possibility of repetitious litigation;

d.      Treatment as a class action will permit a large number of similarly-situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would require; and

e.      Class treatment will permit the adjudication of relatively small claims by many members of the Classes who otherwise could not afford to litigate an antitrust claim such as is asserted in this complaint on an individual basis.

22.      This class action present no difficulties of management that would preclude its maintenance as a class action.

## IV.      INTERSTATE TRADE AND COMMERCE.

23.      The alleged conspiracy, which began at least as early as January 1, 2005, and continues to the present (the "Class Period"), by the Defendants to affect, fix, control, raise, stabilize, and/or maintain prices for PSPs within the United States, its territories and the District of Columbia in violation of Sections 1 and 3 of the Sherman Antitrust Act (15 U.S.C. 1, 3) directly affected interstate commerce within the United States.

24.      Throughout the Class Period, there was a continuous and uninterrupted flow of invoices for payment, payments, and other documents essential to the sale of PSPs in interstate commerce between and among offices of each of the Defendants and their respective customers located throughout the United States, its territories and the District of Columbia.

25.      Throughout the Class Period, Defendants sold and shipped substantial amounts of PSPs in a continuous and uninterrupted flow of interstate commerce throughout the United States, its territories and the District of Columbia

26.      Throughout the Class Period, Defendants' unlawful activities, as described herein, took place within and substantially affected the flow of interstate commerce and had a direct,

substantial and reasonably foreseeable effect upon commerce in the United States, its territories and the District of Columbia.

## V.      NATURE OF TRADE AND COMMERCE.

### A.      Overview of the Packaged Seafood Products Industry.

27.      PSPs are composed of raw seafood, primarily tuna, that is processed to preserve and enhance flavor, and ensure product safety.  Seafood is caught offshore and delivered to canneries.  Upon delivery to a processing plant, an initial quality control inspection is performed.  Once it has passed the initial quality control inspection, the seafood is prepared for packaging.

28.      Each package is filled, sealed and cooked under pressure to make the products commercially sterile and give them a long shelf life.

29.      PSPs are sold, in their original packaging, directly to wholesale distributors, who, in turn, re-sell, also in their original packaging, to grocery stores, restaurants, school districts and other outlets.  Additionally, PSPs are sold both directly and indirectly, in their original packaging, to club warehouses, retail groceries, grocery cooperatives, mass merchandisers, and drug stores, among others, who resell PSPs to end-user consumers in their original individual packaging.

30.      Total United States retail sales of shelf-stable seafood products were $2.346 billion in 2011 and approximately $2.4 billion in 2012.  Canned tuna represents 73% of these totals.  United States retail sales of shelf-stable tuna were $1.719 billion in 2011 and over $1.75 billion in 2012.

31.      Defendants are the largest domestic manufacturers of PSPs in a highly concentrated industry.  Bumble Bee had about had 29% of the domestic shelf-stable seafood market in 2011, Chicken of the Sea had 18.4% and StarKist had 25.3%.  The remaining market share was comprised of smaller companies and private label brands.  With respect to shelf-stable tuna, StarKist had 34.6% of the market, Bumble Bee had 27.8% and Chicken of the Sea had 19.4%.

### B.      The Structure and Characteristics of the Packaged Seafood Products Market.

32.      PSPs are commodity products that are sold directly to large retail chains and through grocery wholesalers and distributors.  PSPs varieties have similar shelf life, contain

similar amounts of seafood, and are marketed in cans, pouches, and cups.  Therefore, purchasers of PSPs are more likely to be influenced by price when making a purchasing decision.

33.     There are substantial barriers that preclude, or reduce, entry into the PSPs market, including high start-up costs, manufacturing expertise, access to raw materials, and access to distribution channels.  Therefore, Defendants could collectively raise prices without fear of being undercut by new entrants.

34.     Purchasers routinely source their PSPs from one of the four Defendants.  As a result, Defendants dominate the United States PSPs market.

35.     Defendants possessed significant market power to raise prices for PSPs to supra-competitive levels in the United States.

36.     There are no economically reasonable substitutes for PSPs.  Alternative seafood, such as frozen seafood or fresh seafood, does not have a commensurate shelf life and requires preparation, such as cooking, before it can be consumed.

37.     There are also economic indications that support the conclusion that there was collusive pricing within the domestic PSPs industry.

38.     Consumption of PSPs, particularly canned tuna, has declined over the last ten years in the United States.  The annual consumption per person was 3.1 lbs. in 2005, but had fallen to 2.3 lbs. in 2013.  While Americans are buying less canned seafood, they are paying more for what they do buy.  Given this decline in consumption of PSPs, the prices for PSPs did not go down.

39.     Raw material costs do not adequately explain these price increases.  While the cost of tuna rose in 2012 and early 2103, it declined thereafter due to excess supply.  Despite declining raw material costs, Defendants did not decrease prices.

**C.     Defendants' Anticompetitive Conduct.**

40.     On information and belief, Defendants Tri-Union, Bumble Bee and StarKist participated in anticompetitive activities beginning at least as early as January 2005 and continuing to the present.  These activities included telephone calls, and frequent in-person meetings at specified locations, including hotels and restaurants.  During these meetings and calls,

Defendants shared sensitive business information, and entered into agreements to fix, raise, stabilize, and maintain prices of PSPs sold to consumers in the United States.

41.     On information and belief, senior executives of Defendants met at least twice a year.

42.     On information and belief, at other times, top executives regularly discussed prices and shared sensitive customer information.

43.     On information and belief, throughout the class period, Defendants communicated regularly by telephone to discuss prices and sensitive customer information.  For example, during at least one telephone conversation between Bumble Bee and StarKist executives, StarKist informed Bumble Bee that StarKist and Tri-Union (Chicken of the Sea) were in agreement to raise prices.

44.     On information and belief, Defendants discussed pricing, and agreed to coordinate the timing and amount of price increases for PSPs sold to customers in the United States. Defendants also agreed to restrict capacity and allocate customers.

45.     On information and belief, Defendants agreed to exchange, and did exchange, information during their telephone conversations and meetings for the purpose of monitoring and enforcing adherence to their agreements.

**D.     Plaintiff Suffered Antitrust Injury.**

46.     Defendants' conspiracy had the following effects, among others:

a.     Price competition has been restrained or eliminated with respect to PSPs; and

b.     The prices of PSPs have been affected, fixed, controlled, raised, stabilized, or maintained at artificially inflated levels.

47.     During the Class Period, Defendants charged supra-competitive prices for PSPs sold to Plaintiff.  By reason of Defendants' alleged violations of the antitrust laws, Plaintiff and the members of the Classes have sustained injury to their business or property by having paid higher prices for PSPs than they would have paid absent Defendants' alleged illegal contract,

1    combination or conspiracy, and, as a result, have suffered damages in an amount to be determined.

2    **VI.    ACTIVE CONCEALMENT.**

3        48.    Throughout the relevant period, Defendants affirmatively and actively concealed

4    their unlawful conduct.

5        49.    Plaintiff and members of the Classes had no knowledge of the combination or

6    conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set

7    forth herein, until shortly before this Complaint was filed.  Plaintiff and the members of the

8    Classes could not have discovered these violations earlier than that time because Defendants'

9    conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in

10   furtherance thereof, and actively concealed their activities through various other means and

11   methods designed to avoid detection.  In addition, the conspiracy was by its nature self-

12   concealing.

13       50.    Plaintiff and the members of the Classes are indirect purchasers of PSPs.  They had

14   no direct contact or interaction with the Defendants and had no means from which they could have

15   discovered the combination and conspiracy described in this Complaint prior to shortly before this

16   litigation was commenced.

17       51.    No information in the public domain was available to Plaintiff and the members of

18   the Classes prior to the public disclosure of the DOJ's investigation of the PSPs industry, which

19   only recently revealed sufficient information to suggest that the Defendants were involved in a

20   conspiracy to fix prices for PSPs.  Plaintiff and the members of the Classes had no means of

21   obtaining any facts or information concerning any aspect of Defendants' dealings with direct

22   purchasers of such products, much less the fact that they and their co-conspirators had engaged in

23   the combination and conspiracy alleged herein.

24       52.    Defendants engaged in a successful, illegal price-fixing conspiracy with respect to

25   PSPs, which they affirmatively concealed, in at least the following respects:

26           a.    By agreeing among themselves not to discuss publicly, or otherwise reveal,

27   the nature and substance of the acts and communications in furtherance of their illegal scheme,

28

---

1   and by agreeing to expel those who failed to do so; and

2           b.      By agreeing on other means to avoid detection of their illegal conspiracy to

3   fix the prices of PSPs.

4       53.     As a result of Defendants' active concealment of their conspiracy, Plaintiff and the

5   Classes assert the tolling of any applicable statute of limitations affecting the rights of action of

6   Plaintiff and members of the Classes.

7   **VII.    VIOLATIONS ALLEGED.**

8       **Count I:  Violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. 1, 3)**

9       54.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth

10  herein.

11      55.     Defendants and their co-conspirators engaged in a continuing contract,

12  combination, and conspiracy to artificially fix, raise, maintain, and/or stabilize the prices of PSPs

13  within the United States, its territories, and the District of Columbia in violation of Sections 1 and

14  3 of the Sherman Act (15 U.S.C. 1, 3).

15      56.     Defendants and their co-conspirators agreed to, and did in fact, restrain trade or

16  commerce by affecting, fixing, controlling, raising, stabilizing, and/or maintaining at artificial and

17  non-competitive levels, the prices of such PSPs.

18      57.     In formulating and effectuating their contract, combination or conspiracy,

19  Defendants and their co-conspirators engaged in anticompetitive activities, the purpose and effect

20  of which were to artificially affect, fix, control, raise, stabilize, and/or maintain the price of PSPs.

21      58.     The illegal combination and conspiracy alleged herein had the following effects,

22  among others::

23          a.      The prices charged by Defendants to, and paid by, Plaintiff and members of

24  the Classes for PSPs were affected, controlled, fixed, raised, stabilized and/or maintained at

25  artificially high and non-competitive levels;

26          b.      Plaintiff and members of the Classes have been deprived of free and open

27  competition in the purchase of PSPs;

28

---

c.      Plaintiff and members of the Classes have been required to pay more for PSPs than they would have paid in a competitive marketplace absent Defendants' price-fixing conspiracy; and

d.      Competition in the sale of PSPs has been restrained, suppressed or eliminated.

59.      As a direct and proximate result of Defendants' conduct, Plaintiff and members of the Classes have been injured and damaged in their business and property in an amount to be determined according to proof.

60.      These violations are continuing and will continue unless enjoined by this Court.

61.      Pursuant to Section 16 of the Clayton Act (15 U.S.C. 26), Plaintiff and the Nationwide Class seek the issuance of an injunction against Defendants, preventing and restraining the violations alleged herein, as well as obtaining restitution or disgorgement from each Defendant.

**Count II:  Violation of State Antitrust Statutes**

62.      Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

63.      As to the Arizona Damages Class, Plaintiff further alleges as follows:

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintain, at artificial and/or non-competitive levels, the prices at which PSPs were sold, distributed or obtained in Arizona.

b.      Defendants' combinations or conspiracies had the following effects:  (1) PSPs price competition was restrained, suppressed, and eliminated throughout Arizona; (2) PSPs prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high levels throughout Arizona; (3) Arizona Purchasers paid supra-competitive, artificially inflated prices for PSPs.

c.      During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, Arizona Purchasers have been injured in their business and property and are threatened with further injury.

e.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.*[1]   Accordingly, Arizona Purchasers seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq*.

64.     As to the California Damages Class, Plaintiff further alleges as follows:

a.      Beginning at a time presently unknown to Plaintiff, but at least as early as January 1, 2005, and continuing thereafter to the present, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professional Professions Code.  Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize and maintain prices of PSPs at supra-competitive levels.

b.      The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and to allocate markets for Packaged Seafood Products.

c.      For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices, and course of conduct set forth above and the following:  (1) fixing, raising, stabilizing and/or maintaining the price of PSPs; and (2) allocating among themselves the production of PSPs.

d.      The combination and conspiracy alleged has had, *inter alia*, the following effects:  (1) price competition in the sale of PSPs has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for PSPs sold by Defendants and their co-

---

[1] In compliance with Arizona's Antitrust Act, Ariz. Rev. Stat. § 44-1415, Plaintiff mailed a copy of this complaint to the Arizona Attorney General on November 18, 2015.

conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels in the State of California; and (3) those who purchased PSPs directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

e.      As a direct and proximate result of Defendants' unlawful conduct, California Purchasers have been injured in their business and property in that they paid more for PSPs than they otherwise would have paid in the absence of Defendants' unlawful conduct.  As a result of Defendants' violation of Section 16720, *et seq*. of the California Business and Professions Code, Plaintiff and the California Purchasers seek treble damages and the costs of suit, including reasonable attorneys' fees, pursuant to Section 16750(a) of the California Business and Professions Code.

65.      As to the District of Columbia Damages Class, Plaintiff further alleges as follows:

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which PSPs were sold, distributed or obtained in the District of Columbia.

b.      Defendants' combinations or conspiracies had the following effects:  (1) PSPs price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) PSPs prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high levels throughout District of Columbia; (3) District of Columbia Purchasers paid supra-competitive, artificially inflated prices for PSPs.

c.      During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, District of Columbia Purchasers have been injured in their business and property and are threatened with further injury.

e.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq*.  Accordingly,

District of Columbia Purchasers seek all forms of relief available under District of Columbia Code Ann §§ 44-1401, *et seq.*

66.     As to the Hawaii Damages Class, Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which PSPs were sold, distributed or obtained in Hawaii.

b.     Defendants' combinations or conspiracies had the following effects:  (1) PSPs price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) PSPs prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high levels throughout Hawaii; (3) Hawaii Purchasers paid supra-competitive, artificially inflated prices for PSPs.

c.     During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

d.     As a direct and proximate result of Defendants' unlawful conduct, Hawaii Purchasers have been injured in their business and property and are threatened with further injury.

e.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Hawaii Code, H.R.S. § 480-4.[2]  Accordingly, Hawaii Purchasers seek all forms of relief available under Hawaii Code, H.R.S. § 480-1, *et seq.*

67.     As to the Illinois Damages Class, Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which PSPs were sold, distributed or obtained in Illinois.

b.     Defendants' combinations or conspiracies had the following effects:  (1) PSPs price competition was restrained, suppressed, and eliminated throughout Illinois; (2) PSPs

---

[2] In compliance with Hawaii Rev. Stat. § 480-13.3, Plaintiff served a copy of this Complaint on the Hawaii Attorney General.

prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high levels throughout Illinois; (3) Illinois Purchasers paid supra-competitive, artificially inflated prices for PSPs.

c.      During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, Illinois Purchasers have been injured in their business and property and are threatened with further injury.

e.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Illinois Compiled Statutes ("ILCS") 740 ILCS 10/1, *et seq.* Accordingly, Illinois Purchasers seek all forms of relief available under 740 ILCS 10/1, *et seq.*

68.     As to the Iowa Damages Class, Plaintiff further alleges as follows:

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which PSPs were sold, distributed or obtained in Iowa.

b.      Defendants' combinations or conspiracies had the following effects:  (1) PSPs price competition was restrained, suppressed, and eliminated throughout Iowa; (2) PSPs prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high levels throughout Iowa; (3) Iowa Purchasers paid supra-competitive, artificially inflated prices for PSPs.

c.      During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, Iowa Purchasers have been injured in their business and property and are threatened with further injury.

e.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code, H.R.S. §§ 553.1, *et seq.*  Accordingly, Iowa Purchasers seek all forms of relief available under Iowa Code, H.R.S. § 553.1.

69.     As to the Kansas Damages Class, Plaintiff further alleges as follows:

1            a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce

2 by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the

3 prices at which PSPs were sold, distributed or obtained in Kansas.

4            b.      Defendants' combinations or conspiracies had the following effects:  (1)

5 PSPs price competition was restrained, suppressed, and eliminated throughout Kansas; (2) PSPs

6 prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high

7 levels throughout Kansas; (3) Kansas Purchasers paid supra-competitive, artificially inflated prices

8 for PSPs.

9            c.      During the Class Period, Defendants' illegal conduct substantially affected

10 Kansas commerce.

11            d.      As a direct and proximate result of Defendants' unlawful conduct, Kansas

12 Purchasers have been injured in their business and property and are threatened with further injury.

13            e.      By reason of the foregoing, Defendants have entered into agreements in

14 restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.*  Accordingly, Kansas

15 Purchasers seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

16     70.     As to the Michigan Damages Class, Plaintiff further alleges as follows:

17            a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce

18 by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the

19 prices at which PSPs were sold, distributed or obtained in Michigan.

20            b.      Defendants' combinations or conspiracies had the following effects:  (1)

21 PSPs price competition was restrained, suppressed, and eliminated throughout Michigan; (2) PSPs

22 prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high

23 levels throughout Michigan; (3) Michigan Purchasers paid supra-competitive, artificially inflated

24 prices for PSPs.

25            c.      During the Class Period, Defendants' illegal conduct substantially affected

26 Michigan commerce.

27            d.      As a direct and proximate result of Defendants' unlawful conduct, Michigan

28

Purchasers have been injured in their business and property and are threatened with further injury.

e.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.*  Accordingly, Michigan Purchasers seek all forms of relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

71.     As to the Minnesota Damages Class, Plaintiff further alleges as follows:

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which PSPs were sold, distributed or obtained in Minnesota.

b.      Defendants' combinations or conspiracies had the following effects:  (1) PSPs price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) PSPs prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high levels throughout Minnesota; (3) Minnesota Purchasers paid supra-competitive, artificially inflated prices for PSPs.

c.      During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, Minnesota Purchasers have been injured in their business and property and are threatened with further injury.

e.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.50, *et seq.*  Accordingly, Minnesota Purchasers seek all forms of relief available under Minnesota Stat. §§ 325D.50, et *seq.*

72.     As to the Mississippi Damages Class, Plaintiff further alleges as follows:

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which PSPs were sold, distributed or obtained in Mississippi.

b.      Defendants' combinations or conspiracies had the following effects:  (1)

PSPs price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) PSPs prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high levels throughout Mississippi; (3) Mississippi Purchasers paid supra-competitive, artificially inflated prices for PSPs.

        c.      During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

        d.      As a direct and proximate result of Defendants' unlawful conduct, Mississippi Purchasers have been injured in their business and property and are threatened with further injury.

        e.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.*  Accordingly, Mississippi Purchasers seek all forms of relief available under Mississippi Code Ann. § 75-21-1, *et seq.*

73.     As to the Montana Damages Class, Plaintiff further alleges as follows:

        a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which PSPs were sold, distributed or obtained in Montana.

        b.      Defendants' combinations or conspiracies had the following effects:  (1) PSPs price competition was restrained, suppressed, and eliminated throughout Montana; (2) PSPs prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high levels throughout Montana; (3) Montana Purchasers paid supra-competitive, artificially inflated prices for PSPs.

        c.      During the Class Period, Defendants' illegal conduct substantially affected Montana commerce.

        d.      As a direct and proximate result of Defendants' unlawful conduct, Montana Purchasers have been injured in their business and property and are threatened with further injury.

        e.      By reason of the foregoing, Defendants have entered into agreements in

1   restraint of trade in violation of Montana Code Annotated 2015 §§ 30-14-205, *et seq.*

2   Accordingly, Montana Purchasers seek all forms of relief available under Montana Code

3   Annotated 2015 §§ 30-14-205, *et seq.*

4       74.   As to the Nebraska Damages Class, Plaintiff further alleges as follows:

5       a.   Defendants agreed to, and did in fact, act in restraint of trade or commerce

6   by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the

7   prices at which PSPs were sold, distributed or obtained in Nebraska.

8       b.   Defendants' combinations or conspiracies had the following effects:  (1)

9   PSPs price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) PSPs

10   prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high

11   levels throughout Nebraska; (3) Nebraska Purchasers paid supra-competitive, artificially inflated

12   prices for PSPs.

13       c.   During the Class Period, Defendants' illegal conduct substantially affected

14   Nebraska commerce.

15       d.   As a direct and proximate result of Defendants' unlawful conduct, Nebraska

16   Purchasers have been injured in their business and property and are threatened with further injury.

17       e.   By reason of the foregoing, Defendants have entered into agreements in

18   restraint of trade in violation of Neb. Rev. Stat. §§ 59-801, *et seq.*  Accordingly, Nebraska

19   Purchasers seek all forms of relief available under Neb. Rev. Stat. §§ 59-801, *et seq.*,

20       75.   As to the Nevada Damages Class, Plaintiff further alleges as follows:

21       a.   Defendants agreed to, and did in fact, act in restraint of trade or commerce

22   by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the

23   prices at which PSPs were sold, distributed or obtained in Nevada.

24       b.   Defendants' combinations or conspiracies had the following effects:  (1)

25   PSPs price competition was restrained, suppressed, and eliminated throughout Nevada; (2) PSPs

26   prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high

27   levels throughout Nevada; (3) Nevada Purchasers paid supra-competitive, artificially inflated

28

1   prices for PSPs.

2           c.     During the Class Period, Defendants' illegal conduct substantially affected

3   Nevada commerce.

4           d.     As a direct and proximate result of Defendants' unlawful conduct, Nevada

5   Purchasers have been injured in their business and property and are threatened with further injury.

6           e.     By reason of the foregoing, Defendants have entered into agreements in

7   restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A, *et seq.*[3]  Accordingly, Nevada

8   Purchasers seek all forms of relief available under Nevada Rev. Stat. Ann. §§ 598A, et *seq.* .

9       76.    As to the New Hampshire Damages Class, Plaintiff further alleges as follows:

10           a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce

11   by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the

12   prices at which PSPs were sold, distributed or obtained in New Hampshire.

13           b.     Defendants' combinations or conspiracies had the following effects:  (1)

14   PSPs price competition was restrained, suppressed, and eliminated throughout New Hampshire;

15   (2) PSPs prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially

16   high levels throughout New Hampshire; (3) New Hampshire Purchasers paid supra-competitive,

17   artificially inflated prices for PSPs.

18           c.     During the Class Period, Defendants' illegal conduct substantially affected

19   New Hampshire commerce.

20           d.     As a direct and proximate result of Defendants' unlawful conduct, New

21   Hampshire Purchasers have been injured in their business and property and are threatened with

22   further injury.

23           e.     By reason of the foregoing, Defendants have entered into agreements in

24   restraint of trade in violation of New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-

25   _____

26   [3] In compliance with the Nevada Unfair Trade Practices Act, Nev. Rev. Stat. Ann. §598A.210(3),

27   Plaintiff mailed a copy of this complaint to the Nevada Attorney General on November 18, 2015

28

A:2, *et seq.*  Accordingly, New Hampshire Purchasers seek all forms of relief available under New Hampshire N.H. Rev. Stat. §§ 358-A:2, *et seq.*

77.     As to the New Mexico Damages Class, Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which PSPs were sold, distributed or obtained in New Mexico.

b.     Defendants' combinations or conspiracies had the following effects:  (1) PSPs price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) PSPs prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high levels throughout New Mexico; (3) New Mexico Purchasers paid supra-competitive, artificially inflated prices for PSPs.

c.     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

d.     As a direct and proximate result of Defendants' unlawful conduct, New Mexico Purchasers have been injured in their business and property and are threatened with further injury.

e.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.*  Accordingly, New Mexico Purchasers seek all forms of relief available under New Mexico Stat. Ann §§ 57-1-1, *et seq.*

78.     As to the New York Damages Class, Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which PSPs were sold, distributed or obtained in New York.

b.     Defendants' combinations or conspiracies had the following effects:  (1) PSPs price competition was restrained, suppressed, and eliminated throughout New York; (2) PSPs prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high

levels throughout New York; (3) New York Purchasers paid supra-competitive, artificially inflated prices for PSPs.

        c.     During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

        d.     As a direct and proximate result of Defendants' unlawful conduct, New York Purchasers have been injured in their business and property and are threatened with further injury.

        e.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New York General Business Law § 340, *et seq.*[4]  Accordingly, New York Purchasers seek all forms of relief available under New York General Business Law § 340, *et seq.*

    79.    As to the North Carolina Damages Class, Plaintiff further alleges as follows:

        a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which PSPs were sold, distributed or obtained in North Carolina.

        b.     Defendants' combinations or conspiracies had the following effects:  (1) PSPs price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) PSPs prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high levels throughout North Carolina; (3) North Carolina Purchasers paid supra-competitive, artificially inflated prices for PSPs.

        c.     During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

        d.     As a direct and proximate result of Defendants' unlawful conduct, North Carolina Purchasers have been injured in their business and property and are threatened with

---

[4] In compliance with New York's Gen Bus. Law § 340(5), Plaintiff mailed a copy of this complaint to the New York State Attorney General on November 18, 2015.

1   further injury.

2           e.     By reason of the foregoing, Defendants have entered into agreements in

3   restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.*  Accordingly, North

4   Carolina Purchasers seek all forms of relief available under North Carolina Gen. Stat. §§ 75-1, *et*

5   *seq.*

6        80.    As to the North Dakota Damages Class, Plaintiff further alleges as follows:

7           a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce

8   by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the

9   prices at which PSPs were sold, distributed or obtained in North Dakota.

10          b.     Defendants' combinations or conspiracies had the following effects:  (1)

11  PSPs price competition was restrained, suppressed, and eliminated throughout North Dakota; (2)

12  PSPs prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high

13  levels throughout North Dakota; (3) North Dakota Purchasers paid supra-competitive, artificially

14  inflated prices for PSPs.

15          c.     During the Class Period, Defendants' illegal conduct substantially affected

16  North Dakota commerce.

17          d.     As a direct and proximate result of Defendants' unlawful conduct, North

18  Dakota Purchasers have been injured in their business and property and are threatened with further

19  injury.

20          e.     By reason of the foregoing, Defendants have entered into agreements in

21  restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.*  Accordingly,

22  North Dakota Purchasers seek all forms of relief available under North Dakota Cent. Code §§ 51-

23  08.1-01, *et seq.*

24       81.    As to the Oregon Damages Class, Plaintiff further alleges as follows:

25          a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce

26  by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the

27  prices at which PSPs were sold, distributed or obtained in Oregon.

28

1          b.       Defendants' combinations or conspiracies had the following effects:  (1)

2    PSPs price competition was restrained, suppressed, and eliminated throughout Oregon; (2) PSPs

3    prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high

4    levels throughout Oregon; (3) Oregon Purchasers paid supra-competitive, artificially inflated

5    prices for PSPs.

6          c.       During the Class Period, Defendants' illegal conduct substantially affected

7    Oregon commerce.

8          d.       As a direct and proximate result of Defendants' unlawful conduct, Oregon

9    Purchasers have been injured in their business and property and are threatened with further injury.

10         e.       By reason of the foregoing, Defendants have entered into agreements in

11   restraint of trade in violation of Oregon Revised Statutes ("ORS') §§ 646.705, *et seq*.[5]

12   Accordingly, Oregon Purchasers seek all forms of relief available under ORS §§ 646.705, *et seq.*

13         82.      As to the South Carolina Damages Class, Plaintiff further alleges as follows:

14         a.       Defendants agreed to, and did in fact, act in restraint of trade or commerce

15   by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the

16   prices at which PSPs were sold, distributed or obtained in South Carolina.

17         b.       Defendants' combinations or conspiracies had the following effects:  (1)

18   PSPs price competition was restrained, suppressed, and eliminated throughout South Carolina; (2)

19   PSPs prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high

20   levels throughout South Carolina; (3) South Carolina Purchasers paid supra-competitive,

21   artificially inflated prices for PSPs.

22         c.       During the Class Period, Defendants' illegal conduct substantially affected

23   South Carolina commerce.

24         d.       As a direct and proximate result of Defendants' unlawful conduct, South

25   _____

26   [5] In compliance with Oregon Rev. Stat. § 340(5), Plaintiff mailed a copy of this complaint to the
27   Oregon Attorney General on November 18, 2015.

28

1    Carolina Purchasers have been injured in their business and property and are threatened with

2    further injury.

3              e.       By reason of the foregoing, Defendants have entered into agreements in

4    restraint of trade in violation of South Carolina Code of Laws §§ 39-3-10, *et seq*.  Accordingly,

5    South Carolina Purchasers seek all forms of relief available under South Carolina Code of Laws

6    §§ 39-3-10, *et seq.*

7         83.    As to the South Dakota Damages Class, Plaintiff further alleges as follows:

8              a.       Defendants agreed to, and did in fact, act in restraint of trade or commerce

9    by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the

10   prices at which PSPs were sold, distributed or obtained in South Dakota.

11             b.       Defendants' combinations or conspiracies had the following effects:  (1)

12   PSPs price competition was restrained, suppressed, and eliminated throughout South Dakota; (2)

13   PSPs prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high

14   levels throughout South Dakota; (3) South Dakota Purchasers paid supra-competitive, artificially

15   inflated prices for PSPs.

16             c.       During the Class Period, Defendants' illegal conduct substantially affected

17   South Dakota commerce.

18             d.       As a direct and proximate result of Defendants' unlawful conduct, South

19   Dakota Purchasers have been injured in their business and property and are threatened with further

20   injury.

21             e.       By reason of the foregoing, Defendants have entered into agreements in

22   restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq*.  Accordingly,

23   South Dakota Purchasers seek all forms of relief available under South Dakota Codified Laws

24   Ann. §§ 37-1, *et seq.*

25        84.    As to the Tennessee Damages Class, Plaintiff further alleges as follows:

26             a.       Defendants agreed to, and did in fact, act in restraint of trade or commerce

27   by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the

28

---

prices at which PSPs were sold, distributed or obtained in Tennessee.

b. Defendants' combinations or conspiracies had the following effects: (1) PSPs price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) PSPs prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high levels throughout Tennessee; (3) Tennessee Purchasers paid supra-competitive, artificially inflated prices for PSPs.

c. During the Class Period, Defendants' illegal conduct substantially affected Tennessee commerce.

d. As a direct and proximate result of Defendants' unlawful conduct, Tennessee Purchasers have been injured in their business and property and are threatened with further injury.

e. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, Tennessee Purchasers seek all forms of relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

85. As to the Vermont Damages Class, Plaintiff further alleges as follows:

a. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which PSPs were sold, distributed or obtained in Vermont.

b. Defendants' combinations or conspiracies had the following effects: (1) PSPs price competition was restrained, suppressed, and eliminated throughout Vermont; (2) PSPs prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high levels throughout Vermont; (3) Vermont Purchasers paid supra-competitive, artificially inflated prices for PSPs.

c. During the Class Period, Defendants' illegal conduct substantially affected Vermont commerce.

d. As a direct and proximate result of Defendants' unlawful conduct, Vermont

1   Purchasers have been injured in their business and property and are threatened with further injury.

2          e.    By reason of the foregoing, Defendants have entered into agreements in

3   restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq.*  Accordingly, Vermont

4   Purchasers seek all forms of relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq.*

5       86.    As to the Wisconsin Damages Class, Plaintiff further alleges as follows:

6          a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce

7   by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the

8   prices at which PSPs were sold, distributed or obtained in Wisconsin.

9          b.    Defendants' combinations or conspiracies had the following effects:  (1)

10   PSPs price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2)

11   PSPs prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high

12   levels throughout Wisconsin; (3) Wisconsin Purchasers paid supra-competitive, artificially

13   inflated prices for PSPs.

14          c.    During the Class Period, Defendants' illegal conduct substantially affected

15   Wisconsin commerce.

16          d.    As a direct and proximate result of Defendants' unlawful conduct,

17   Wisconsin Purchasers have been injured in their business and property and are threatened with

18   further injury.

19          e.    By reason of the foregoing, Defendants have entered into agreements in

20   restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.*  Accordingly, Wisconsin

21   Purchasers seek all forms of relief available under Wisconsin Stat. §§ 133.01, *et seq.*

22   **Count III:  State Consumer Protection, Consumer Fraud and Unfair Competition Statutes**

23   87.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth

24   herein.

25   88.    As to the Arizona Damages Class, Plaintiff further alleges as follows:

26          a.    Beginning on a date unknown to Plaintiff, but at least as early as 2005 and

27   continuing thereafter to the present, Defendants agreed to and did in fact act, use or employ

28

deception, deceptive or unfair acts or practices, fraud, false pretenses, false promises, misrepresentations or concealment, suppression or omissions of material facts with intent that others rely on such concealment, suppression or omissions, in connection with the sale or advertisement of merchandise.

b.     Defendants' combinations or conspiracies had the following effects:  (1) PSPs price competition was restrained, suppressed, and eliminated throughout Arizona; (2) PSP prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high levels throughout Arizona; (3) Arizona purchasers paid supra-competitive, artificially inflated prices for PSPs; (4) Arizona plaintiffs were damaged as a result of Defendants' unlawful practices; and (5) Arizona plaintiffs were damaged at least in the amount by which Defendants illegally overcharged Arizona purchasers for Defendants' PSPs.

c.     During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

d.     As a direct and proximate result of Defendants' unlawful conduct, Arizona purchasers have been injured in their business and property and are threatened with further injury.

e.     Defendants' conduct was willful, wanton and/or reckless and showing a reckless indifference to the interests of others evincing the state of mind for the imposition of punitive damages.

f.     By reason of the foregoing Defendants have entered into agreements in restraint of trade in violation of Arizona's Consumer Fraud statute, Ariz. Rev. Stat. Ann. § 44-1522.  Accordingly, Arizona purchasers seek all forms of relief available under Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.* and the common law of Arizona.

89.     As to the Arkansas Damages Class, Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which PSPs were sold, distributed or obtained in Arkansas.

b.     The foregoing conduct constitutes "unfair methods of competition," and

1    "unfair or deceptive acts or practices in the conduct of any trade or commerce" within the meaning

2    of Arkansas Code Ann. § 4-75-301, *et seq.*

3              c.      During the Class Period, Defendants' illegal conduct substantially affected

4    Arkansas commerce and consumers.

5              d.      Defendants' unlawful conduct had the following effects:  (1) PSPs price

6    competition was restrained, suppressed, and eliminated throughout Arkansas; (2) PSPs prices were

7    raised, fixed, maintained and stabilized at artificially high levels throughout Arkansas; (3)

8    Arkansas Purchasers were deprived of free and open competition; and (4) Florida Purchasers paid

9    supra-competitive, artificially inflated prices for PSPs.

10             e.      As a direct and proximate result of Defendants' unlawful conduct, Arkansas

11   Purchasers have been injured and are threatened with further injury.

12             f.      Defendants have engaged in unfair competition or unfair or deceptive acts

13   or practices in violation of Arkansas Code Ann. § 4-75-301, *et seq*. and accordingly, Arkansas

14   Purchasers seek all relief available under that statute.

15        90.    As to the California Damages Class, Plaintiff further alleges as follows:

16             a.      Beginning on a date unknown to Plaintiff, but at least as early as January 1,

17   2005, and continuing thereafter to the present, Defendants committed and continue to commit acts

18   of unfair competition, as defined by Sections 17200, *et seq*. of the California Business and

19   Professions Code by engaging in the acts and practices specified above.

20             b.      This claim is instituted pursuant to Sections 17203 and 17204 of the

21   California Business and Professions Code, to obtain restitution from these Defendants for acts, as

22   alleged herein, that violated Section 17200 of the California Business and Professions Code,

23   commonly known as the Unfair Competition Law.

24             c.      The Defendants' conduct as alleged herein violated Section 17200.  The

25   acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged

26   herein, constituted a common continuous and continuing course of conduct of unfair competition

27   by means of unfair, unlawful and/or fraudulent business practices within the meaning of California

28

---

CLASS ACTION COMPLAINT              - 36 -          Case No.

Business and Professions Code, Section 17200, *et seq*., including, but not limited to, the following:  (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq*., of the California Business and Professions Code, set forth above.

        d.        Defendants' acts, omissions, misrepresentations, practices and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.* of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent; Defendants' acts and practices are unfair to consumers of PSPs in the State of California and throughout the United States, within the meaning of Section 17200, California Business and Professions Code; and

        e.        Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

        f.        California Plaintiff and each of the California Damages Class members are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices;

        g.        The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future

        h.        The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiff and California Purchasers to pay supra-competitive and artificially-inflated prices for PSPs.  Plaintiff and California Purchasers suffered injury in fact and lost money or property as a result of such unfair competition.

        i.        The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code;

        j.        As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition.  Plaintiff and the California Purchasers are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and

1   benefits which may have been obtained by Defendants as a result of such business practices,

2   pursuant to California Business and Professions Code, Section 17200, *et seq.*

3        91.     As to the Florida Damages Class, Plaintiff further alleges as follows:

4           a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce

5   by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the

6   prices at which PSPs were sold, distributed or obtained in Florida.

7           b.     The foregoing conduct constitutes "unfair methods of competition," and

8   "unfair or deceptive acts or practices in the conduct of any trade or commerce" within the meaning

9   of Florida Stat. § 501.204.

10           c.     During the Class Period, Defendants' illegal conduct substantially affected

11   Florida commerce and consumers.

12           d.     Defendants' unlawful conduct had the following effects:  (1) PSPs price

13   competition was restrained, suppressed, and eliminated throughout Florida; (2) PSPs prices were

14   raised, fixed, maintained and stabilized at artificially high levels throughout Florida; (3) Florida

15   Purchasers were deprived of free and open competition; and (4) Florida Purchasers paid supra-

16   competitive, artificially inflated prices for PSPs.

17           e.     As a direct and proximate result of Defendants' unlawful conduct, Florida

18   Purchasers have been injured and are threatened with further injury.

19           f.     Defendants have engaged in unfair competition or unfair or deceptive acts

20   or practices in violation of Florida Stat. § 501.201, *et seq*. and accordingly, Florida Purchasers

21   seek all relief available under that statute.

22        92.     As to the Hawaii Damages Class, Plaintiff further alleges as follows:

23           a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce

24   by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the

25   prices at which PSPs were sold, distributed or obtained in Hawaii.

26           b.     The foregoing conduct constitutes "unfair methods of competition," and

27   "unfair or deceptive acts or practices in the conduct of any trade or commerce" within the meaning

28

1  of Hawaii Rev. Stat. § 480-2.

2          c.      During the Class Period, Defendants' illegal conduct substantially affected

3  Hawaii commerce and consumers.

4          d.      Defendants' unlawful conduct had the following effects:  (1) PSPs price

5  competition was restrained, suppressed, and eliminated throughout Hawaii; (2) PSPs prices were

6  raised, fixed, maintained and stabilized at artificially high levels throughout Hawaii; (3) Hawaii

7  Purchasers were deprived of free and open competition; and (4) Hawaii Purchasers paid supra-

8  competitive, artificially inflated prices for PSPs.

9          e.      As a direct and proximate result of Defendants' unlawful conduct, Hawaii

10  Purchasers have been injured and are threatened with further injury.

11         f.      Defendants have engaged in unfair competition or unfair or deceptive acts

12  or practices in violation of Hawaii Rev. Stat. § 480-2.  Accordingly, Hawaii Purchasers seek all

13  relief available under Hawaii Rev. Stat. §§ 480, *et seq.*

14         93.     As to the Missouri Damages Class, Plaintiff further alleges as follows:

15         a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce

16  by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the

17  prices at which PSPs were sold, distributed or obtained in Missouri.

18         b.      Defendants' combinations or conspiracies had the following effects:  (1)

19  PSPs price competition was restrained, suppressed, and eliminated throughout Missouri; (2) PSPs

20  prices were affected, fixed, controlled, raised, stabilized and/or maintained at artificially high

21  levels throughout Missouri; (3) Missouri Purchasers paid supra-competitive, artificially inflated

22  prices for PSPs.

23         c.      During the Class Period, Defendants' illegal conduct substantially affected

24  Missouri commerce.

25         d.      As a direct and proximate result of Defendants' unlawful conduct, Missouri

26  Purchasers have been injured in their business and property and are threatened with further injury.

27         e.      By reason of the foregoing, Defendants have entered into agreements in

28

restraint of trade in violation of Missouri Merchandising Protection Act, Mo. Rev. Stat. § 407.020. Accordingly, Missouri Purchasers seek all forms of relief available under Missouri Mo. Rev. Stat. §§ 407.020, *et seq*.

94.     As to the Nebraska Damages Class, Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which PSPs were sold, distributed or obtained in Nebraska.

b.     The foregoing conduct constitutes "unfair methods of competition," and "unfair or deceptive acts or practices I the conduct of any trade or commerce" within the meaning of Neb. Rev. Stat. § 59-1602.

c.     During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce and consumers.

d.     Defendants' unlawful conduct had the following effects:  (1) PSPs price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) PSPs prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Nebraska Purchasers were deprived of free and open competition; and (4) Nebraska Purchasers paid supra-competitive, artificially inflated prices for PSPs.

e.     As a direct and proximate result of Defendants' unlawful conduct, Nebraska Purchasers have been injured and are threatened with further injury.

f.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. §§ 59-1601, *et seq.*, and accordingly, Nebraska Purchasers seek all relief available under those statutes.

95.     As to the New Mexico Damages Class, Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which PSPs were sold, distributed or obtained in New Mexico.

b.     Defendants also took efforts to conceal their agreements from New Mexico

1  purchasers.

2  c.  The foregoing conduct constitutes "unfair methods of competition," and

3  "unfair or deceptive acts or practices in the conduct of any trade or commerce" within the meaning

4  of New Mexico Stat. § 57-12-3, in that such conduct resulted in a gross disparity between the

5  value received by New Mexico Purchasers and the prices paid by them for PSPs as set forth in

6  New Mexico Stat. §57-12-2E.

7  d.  During the Class Period, Defendants' illegal conduct substantially affected

8  New Mexico commerce and consumers.

9  e.  Defendants' unlawful conduct had the following effects:  (1) PSPs price

10  competition was restrained, suppressed, and eliminated throughout New Mexico; (2) PSPs prices

11  were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico;

12  (3) New Mexico Purchasers were deprived of free and open competition; and (4) New Mexico

13  Purchasers paid supra-competitive, artificially inflated prices for PSPs.

14  f.  As a direct and proximate result of Defendants' unlawful conduct, New

15  Mexico Purchasers have been injured and are threatened with further injury.

16  g.  Defendants have engaged in unfair competition or unfair or deceptive acts

17  or practices in violation of New Mexico Stat. §§ 57-12-1, *et seq.*, and accordingly, New Mexico

18  Purchasers seek all relief available under those statutes.

19  96.  As to the New York Damages Class, Plaintiff further alleges as follows:

20  a.  Defendants agreed to, and did in fact, act in restraint of trade or commerce

21  by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the

22  prices at which PSPs were sold, distributed or obtained in New York.

23  b.  Defendants also took efforts to conceal their agreements from New York

24  Purchasers.

25  c.  Defendants' illegal conduct substantially affected New York commerce and

26  consumers.

27  d.  The conduct of Defendants as described herein constitutes consumer-

28

oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

e.      As consumers, New York Purchasers were targets of the conspiracy.

f.      Defendants' secret agreements as described herein were not known to members of the New York Damages Class.

g.      Defendants made public statements about the price of PSPs that Defendants knew would be seen by New York Purchasers; such statements either omitted material information that rendered these statement that they made materially misleading or affirmatively misrepresented the real cause of price increases for PSPs; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

h.      Because of Defendants' unlawful trade practices in the State of New York, there was a broad impact on New York Purchases who indirectly purchased PSPs; and New York Purchasers have been injured because they have paid more for PSPs than they would have paid in the absence of Defendants' unlawful trade acts and practices, and are threatened with further injury.

i.      Because of Defendants' unlawful trade practices in the State of New York, New York Purchasers who indirectly purchased PSPs were misled to believe that they were paying a fair price for PSPs, or that the price increases for PSPs were for valid business reasons.

j.      Defendants knew that their unlawful trade practices with respect to pricing of PSPs would have an impact on New York Purchasers and not just Defendants' direct customers;

k.      Defendants knew that their unlawful trade practices with respect to pricing of PSPs would have a broad impact, causing members of the New York Damages Class who indirectly purchased PSPs to be injured by paying more for PSPs than they would have paid in the absence of Defendants' unlawful trade acts and practices.

l.     During the Class Period, each of the Defendants named herein, directly or indirectly though affiliates they dominated and controlled, manufactured, sold and/or distributed PSPs in New York.

m.     New York Purchasers seek actual damages for their injuries caused by these violations in an amount to be determined at trial.  Without prejudice to their contention that Defendants' unlawful conduct was willful and knowing, New York Purchasers do not seek in this action to have those damages trebled pursuant to N.Y. Gen. Bus. Law § 349(h).

97.     As to the North Carolina Damages Class, Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which PSPs were sold, distributed or obtained in North Carolina.

b.     Defendants also took efforts to conceal their agreements from North Carolina Purchasers.

c.     The conduct of Defendants as described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina Gen. Stat. 75-1.1, *et seq.,* which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

d.     During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

e.     Defendants' unlawful conduct had the following effects:  (1) PSPs price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) PSPs prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) North Carolina Purchasers were deprived of free and open competition; and (4) North Carolina Purchasers paid supra-competitive, artificially inflated prices for PSPs.

f.     As a direct and proximate result of Defendants' unlawful conduct, North Carolina Purchasers have been injured and are threatened with further injury.

1            g.      During the Class Period, each of the Defendants named herein, directly or

2 indirectly though affiliates they dominated and controlled, manufactured, sold and/or distributed

3 PSPs in North Carolina.

4            h.      Defendants have engaged in unfair competition or unfair or deceptive acts

5 or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*., and accordingly, North

6 Carolina Purchasers seek all relief available under that statute.

7      98.     As to the Utah Damages Class, Plaintiff further alleges as follows:

8            a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce

9 by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the

10 prices at which PSPs were sold, distributed or obtained in Utah.

11           b.      The foregoing conduct constitutes "unfair methods of competition," and

12 "unfair or deceptive acts or practices in the conduct of any trade or commerce" within the meaning

13 of Utah Code § 13-5-2.5.

14           c.      During the Class Period, Defendants' illegal conduct substantially affected

15 Utah commerce and consumers.

16           d.      Defendants' unlawful conduct had the following effects:  (1) PSPs price

17 competition was restrained, suppressed, and eliminated throughout Utah; (2) PSPs prices were

18 raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Utah

19 Purchasers were deprived of free and open competition; and (4) Utah Purchasers paid supra-

20 competitive, artificially inflated prices for PSPs.

21           e.      As a direct and proximate result of Defendants' unlawful conduct, Utah

22 Purchasers have been injured and are threatened with further injury.

23           f.      Defendants have engaged in unfair competition or unfair or deceptive acts

24 or practices in violation of Utah Code Ann., § 13-5-2.5, *et seq*.[6] and accordingly, Utah Purchasers

25 _____

26 [6] In compliance with Utah Code Ann., § 76-10-3109(9), Plaintiff mailed a copy of this complaint

27 to the Utah Attorney General on November 18, 2015.

28

1 │ seek all relief available under that statute.

2 │       99.    As to the Vermont Damages Class, Plaintiff further alleges as follows:

3 │       a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce

4 │ by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the

5 │ prices at which PSPs were sold, distributed or obtained in Vermont.

6 │       b.    Defendants deliberately failed to disclose material facts to Vermont

7 │ Purchasers concerning Defendants' unlawful activities and artificially inflated prices for PSPs.

8 │ Defendants owed a duty to disclose such facts and considering the relative lack of sophistication

9 │ of the average, non-business consumer, Defendants breached that duty by their silence.

10 │ Defendants misrepresented to all consumers during the Class Period that Defendants' PSPs prices

11 │ were competitive and fair.

12 │       c.    Because of Defendants' unlawful and unscrupulous trade practices in

13 │ Vermont, Vermont Purchasers who indirectly purchased PSPs were misled or deceived to believe

14 │ that they were paying a fair price of PSPs or that the price increases for PSPs were for valid

15 │ business reasons.

16 │       d.    Defendants' unlawful conduct had the following effects:  (1) PSPs price

17 │ competition was restrained, suppressed, and eliminated throughout Vermont; (2) PSPs prices were

18 │ raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Vermont

19 │ Purchasers were deprived of free and open competition; and (4) Vermont Purchasers paid supra-

20 │ competitive, artificially inflated prices for PSPs.

21 │       e.    As a direct and proximate result of Defendants' illegal conduct, Vermont

22 │ Purchasers suffered an ascertainable loss of money or property as a result of Defendants' use or

23 │ employment of unconscionable and deceptive commercial practices as set forth above.  That loss

24 │ was caused by Defendants' willful and deceptive conduct, as described herein.

25 │       f.    Defendants' misleading conduct and unconscionable activities constitutes

26 │ unfair competition or unfair or deceptive acts or practices in violation of Vermont Stat. Ann. Title

27 │ 9, § 2451, *et seq*., and accordingly, Vermont Purchasers seek all relief available under that statute.

28 │

1    **Count IV:  Unjust Enrichment and Disgorgement of Profits**

2          100.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every

3    allegation set forth in the preceding paragraphs of this Complaint.

4          101.    Defendants have been unjustly enriched through overpayments by Plaintiff and the

5    members of the Classes and the resulting profits.

6          102.    Under common law principles of unjust enrichment, Defendants should not be

7    permitted to retain the benefits conferred *via* overpayments by class members in the following

8    states:  Arizona, California, District of Columbia, Iowa, Michigan, New Mexico and South

9    Dakota.

10         103.    Plaintiff and the members of the Classes in each of the states listed above seek

11   disgorgement of all profits resulting from such overpayments and establishment of a constructive

12   trust from which Plaintiff and the members of the Classes may seek restitution.

13   **VIII.   PRAYER FOR RELIEF.**

14         104.    WHEREFORE, Plaintiff prays:

15         A.      That the Court determine that this action may be maintained as a class action under

16   Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and direct that reasonable

17   notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure be

18   given to the members of the Classes;

19         B.      That the Court adjudge and decree that the contract, combination and conspiracy

20   alleged herein is a *per se* unreasonable restraint of trade in violation of Section 1 of the Sherman

21   Act (15 U.S.C. 1);

22         C.      That the Court adjudge and decree that the contract, combination and conspiracy

23   alleged herein is us an unreasonable restraint of trade in violation of all state antitrust, and/or

24   consumer protection laws alleged above;

25         D.      That the Court enter judgment against Defendants, jointly and severally, in favor of

26   Plaintiff and the members of the Classes;

27         E.      That the Court award Plaintiff and the members of the state-wide Damages Classes

28

damages, including treble damages where appropriate, as well as restitution and/or disgorgement for members of the Nationwide Equitable Relief Classes;

F.      That the Court award Plaintiff and the members of the Class attorneys' fees and costs as well as pre-judgment and post-judgment interest as permitted by law pursuant to Section 4 of the Clayton Act (15 U.S.C. 15) and appropriate state statutes;

G.      That Defendants and their co-conspirators, their respective successors, assigns, parents, subsidiaries, affiliates and transferees, and their respective officers, directors, agents and employees, and all other persons acting or claiming to act on behalf of Defendants or their co-conspirators, or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintain or renewing the combination, conspiracy, agreement, understanding or concert of action, or adopting any practice, plan, program or design having a similar purpose or affect in restraining competition pursuant to Section 16 of the Clayton Act (15 U.S.C. 26); and

H.      That the Court award Plaintiff and the members of the Classes such and other further relief as may be deemed necessary and appropriate.

///

///

///

1    **IX.    JURY TRIAL DEMAND.**

2         Plaintiff requests a jury trial on all matters so triable.

3    DATED:  November 18, 2015          By:   _/s/ Francis O. Scarpulla_____
                                            Francis O. Scarpulla
4

5                                        FRANCIS O. SCARPULLA (CASB No. 41059)
                                        PATRICK B. CLAYTON (CASB No. 240191)
                                        LAW OFFICES OF FRANCIS O. SCARPULLA
6                                        456 Montgomery Street, 17th Floor
                                        San Francisco, CA  94111
7                                        Telephone:  (415) 788-7210
                                        Facsimile:   (415) 788-0706
8                                        fos@scarpullalaw.com
                                        pbc@scarpullalaw.com
9

10                                       W. TIMOTHY NEEDHAM (CASB No. 96542)
                                        AMELIA F. BURROUGHS (CASB No. 221490)
11                                       JANSSEN MALLOY LLP
                                        730 Fifth Street
12                                       P.O. Drawer 1288
                                        Eureka, CA  95501
13                                       Telephone:  (707) 445-2071
                                        Facsimile:  (707) 445-8305
14                                       tneedham@janssenlaw.com
                                        aburroughs@janssenlaw.com
15
                                        *Counsel for Plaintiff*
16                                       KATHY VANGEMERT

17

18

19

20

21

22

23

24

25

26

27

28